IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| United States of America, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 18 C 6944 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| Eric Bloom, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Eric Bloom's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and request for an evidentiary hearing [1] are denied for the reasons stated below. The Court denies a certificate of appealability. Civil case terminated.

## STATEMENT

Bloom was tried on a 20-count indictment before a jury between February 24, 2014 and March 25, 2014. The government dismissed one count during the trial, and the jury found Bloom guilty on the remaining 19 counts of wire fraud and investment-adviser fraud. The Seventh Circuit upheld Bloom's conviction and sentence on appeal, *United States v. Bloom*, 846 F.3d 243 (7th Cir. 2017). The Seventh Circuit's opinion and Bloom's statement of facts on appeal (Def.'s § 2255 Mot., Ex. A, Dkt. # 1-1) provide a full recounting of the relevant facts in this case. The Court will discuss specific facts only as necessary in the text of the order.

**Analysis**

Section 2255 provides that a criminal defendant is entitled to relief from his conviction and sentence if "the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there

has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show" that the defendant is not entitled to relief. *Id*. Relief under § 2255 is available "only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013).

      A.      *Brady* Violation Claim

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "The [Supreme] Court has enumerated three components of a *Brady* violation: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued.'" *Lieberman v. Scott*, No. 18 C 5713, 2019 WL 2450485, at *10 (N.D. Ill. June 12, 2019) (citation omitted).

Bloom argues that the government violated its obligation under *Brady* by failing to disclose until sentencing the position of the Commodities Futures Trading Commission ("CFTC") that its Rule 1.25 "did not, at the relevant time, prohibit the use of leverage." (Def.'s § 2255 Mot., Dkt. # 1, at 6.) Bloom, however, has procedurally defaulted this argument by failing to raise it on appeal. Procedural default means that "[a] claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." *McCoy v. United*

2

*States*, 815 F.3d 292, 295 (7th Cir. 2016). "A federal prisoner cannot bring defaulted claims on collateral attack unless he shows both cause and prejudice for the default." *Id*. "Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is 'actually innocent' of the crimes of which he was convicted." *Id*.

During trial, the government presented the testimony of several witnesses who either directly testified or insinuated that leverage was not permitted in an account governed by CFTC Rule 1.25. Bloom acknowledges that at the sentencing stage of the proceedings, the government offered an affidavit from Robert Wasserman, Chief Counsel for the Division of Clearing and Risk for the CFTC, stating that Sentinel's conduct had inflicted harm on the futures market. Bloom called Wasserman to testify at his sentencing, eliciting testimony from him that Rule 1.25 "neither prohibits nor permits leverage." (Def.'s § 2255 Mot., Ex. C, Dkt. # 1-3, at 12.) From this, Bloom argues that "[b]ecause of the import of Rule 1.25 in the context of Sentinel's operations and [the] trial, the [government's] failure to provide favorable evidence in the CFTC's possession to the defense . . . represents a *Brady* violation and warrants a new trial." (Def.'s § 2255 Mot., Dkt. # 1, at 6.) Based on Bloom's own recitation of the facts, he was aware of the CFTC's position on the issue but failed to raise any *Brady* argument on appeal.

Bloom's attempt to avoid the consequences of his failure is unavailing. Specifically, he argues that the "issue *could not* have been raised on direct appeal because the evidence pointing to the CFTC as a member of the prosecution team [, thus implicating *Brady,*] was not in the record" at the time of the appeal. (Def.'s Reply, Dkt. # 20, at 4) (emphasis in original). Bloom seeks discovery on the issue of whether the CFTC is or should have been considered part of the

3

prosecution team.[1] As an initial matter, the CFTC does not have to have been a member of the prosecution team in order for there to have been a *Brady* violation. The prosecution offered the testimony of Wasserman; thus, if his testimony at issue had been exculpatory, the government would be responsible for any *Brady* violation, regardless of the CFTC's status. The source of the purportedly exculpatory evidence is immaterial if the prosecution knew about it and withheld it.

In any event, defense counsel cross-examined Wasserman at sentencing on the exact issue he now raises. If Bloom believed a *Brady* violation had occurred, he had plenty of notice to either raise it at sentencing or include it as an issue on appeal. Bloom fails to demonstrate cause and prejudice for having failed to do so, or that he is actually innocent; thus, the issue is procedurally defaulted.[2]

B. Sixth Amendment Violation Claim

Bloom next contends that Sentinel's bankruptcy Trustee's "selective" assertion of the attorney-client privilege with respect to the testimony of Peter Savarese, a lawyer Sentinel had

---

[1] Specifically, Bloom seeks to "subpoena written or electronic communications between individuals at the CFTC, U.S. Trustee, . . . private Chapter 11 trustee[,] and prosecutors assigned to the [relevant] investigation" in order to discover the "full extent of the[ir] participation and coordination." (Def.'s Reply, Dkt. # 20, at 2.)

[2] There are numerous problems with Bloom's *Brady* argument as it relates to Rule 1.25; one of which is that the interpretation of Rule 1.25 was heavily litigated in motion practice and at trial. It is unclear to the Court how Wasserman's testimony represents a *Brady* violation in light of the fact that during trial, Bloom filed a brief in support of allowing his witness, Paul Bjarnason, a former CFTC official and consultant to Sentinel who participated in drafting Rule 1.25, to testify that Rule 1.25, in essence, did not prohibit the use of leverage. (*United States v. Bloom*, No. 12 CR 409 (N.D. Ill.), Dkt. # 131.) Moreover, as the Seventh Circuit stated, "Rule 1.25 was only a minor issue in the case against Bloom," and "[t]here was ample evidence for the jury to convict Bloom without considering the nuances of Rule 1.25." *Bloom*, 846 F.3d at 255-256. Even assuming the issue was not procedurally defaulted, there was no *Brady* violation as to the government's purported failure to disclose the "CFTC's position" on Rule 1.25.

4

engaged to provide compliance and disclosure advice, violated Bloom's Sixth Amendment right to call witnesses and present a defense. According to Bloom, Savarese could have testified, among other things, "that he had reviewed Sentinel's disclosures and had found them appropriate, including with regard to the disclosure of leverage." (Def.'s § 2255 Mot., Dkt. # 1, at 23.)

In order to avoid the procedural default bar on this issue, Bloom again contends that the claim "requires development of facts from outside the record" – specifically, whether the Trustee was part of the prosecution team such that a Sixth Amendment violation can be attributed to the government. (Def.'s Reply, Dkt. # 20, at 5.) The Court is not persuaded. Not only did Bloom fail to raise the issue on appeal, he did not raise any objection regarding the Trustee's assertion of the privilege as to Savarese's testimony in front of this Court. "In order to show cause for a procedural default, [the defendant] must demonstrate that some objective factor external to the record impeded his efforts to bring a claim on direct appeal." *Cochran v. United States*, No. 17 C 01569, 2018 WL 2230759, at *9 (S.D. Ind. May 16, 2018). Bloom has failed to do so and thus has procedurally defaulted this claim.

    C.    <u>Ineffectiveness of Appellate Counsel</u>

Bloom contends that part of his good-faith defense to the charges against him was to present the testimony of third-party auditors from the National Futures Association ["NFA"] and McGladrey & Pullen who "audited, reviewed, and/or approved Sentinel[']s operations, set-up, structure, and accounting." (Def.'s § 2255 Mot., Dkt. # 1, at 33.) The government moved in limine to bar the auditors' testimony, and the Court, speaking to defense counsel, ruled as follows:

> If you want evidence that your client relied upon not even advice but a lack of finding of wrongdoing by some outside agency, you're going to have to establish that the outside agency was looking for the very type of wrongdoing that the government is alleging he engaged in.

(2/6/14 Tr., Dkt. # 227 (No. 12 CR 409), at 62.) Bloom did not make such a showing; nevertheless, his counsel asserted several times during closing arguments that Sentinel's auditors did not find any improprieties and that Bloom was entitled to rely on that in conducting Sentinel's affairs:

> Also something you should consider when you're assessing Eric Bloom's good faith is what information did he have about third parties who were reviewing Sentinel's operations, who were reviewing Sentinel's books and records?
> So in addition to all the disclosures that are in the documents we've already gone through and all the directions that he gave to Sentinel employees and all the competent managers that he hired, . . . he had plenty of other reasons to think that everything was being done properly.
> There were a host of audits conducted every year. You have the financial audits, which we talked about, independent outside auditors going through the books and records. Ms. Arana told you, I never deprived the[] [auditors] of any piece of information that they wanted. And we know that's true because the accountants, the auditors, gave an unqualified opinion.
> In addition to the financial audits, there were custody audits. A custody audit -- the testimony was a custody audit is designed to make sure that investor securities, the customer securities, are being held and used properly, that they're not being misused, that you're not using SEG 1 assets to benefit the house account.
> Custody audits were done by McGladrey and they were done on a surprise basis.
> . . .
> In addition to that, you had the audits by the NFA, the audit arm of the CFTC. They come in to make sure that you're doing things according to the regulations.
> Eric Bloom knew all of that.

(3/6/15 Trial Tr., Dkt. # 221 (No. 12 CR 409), at 2787-89.)

To succeed on an ineffective assistance of appellate counsel claim, Bloom must show that appellate counsel failed to argue "an issue that is both obvious and clearly stronger than the

issues actually raised." *Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015) (internal quotation marks omitted). Bloom has failed to make such a showing. Bloom raised five issues on appeal: "(a) the evidence was insufficient to support his convictions; (b) government misconduct tainted the convictions; (c) the district court erred in its jury instruction regarding Rule 1.25; (d) the court erred in several evidentiary rulings; and (e) his sentence was improper because the court erred in its guideline loss calculation." *Bloom*, 846 F.3d at 250. "When a petitioner contends that his appellate counsel was ineffective because counsel overlooked a meritorious argument, [the Court] first examine[s] the record to see whether the appellate attorney in fact omitted 'significant and obvious' issues." *Stallings v. United States*, 536 F.3d 624, 627 (7th Cir. 2008) (citation omitted). The Court "shall not second-guess strategic decisions that were arguably appropriate at the time but that hindsight has revealed to be unwise." *Id*.

If Bloom is challenging appellate counsel's failure to raise trial counsel's conduct on appeal, the argument fails. Bloom's affidavit indicates that "[a]ppellate counsel informed me that trial counsel could have called auditors as witnesses even in light of the Court's ruling and that [trial counsel] may have misunderstood the ruling." (Def.'s § 2255 Mot., Dkt. # 1-2, ¶ 34.) Bloom also attests that "[a]ppellate counsel informed [Bloom] that the failure to call auditors was . . . an issue of ineffective assistance of counsel and therefore should not be raised on appeal." (*Id*. ¶ 35.) This represents an appropriate strategic decision. The Court did not completely bar the auditors' testimony, but held that it was admissible only if trial counsel could show that the auditors were reviewing Sentinel's books and records for the same issues for which Bloom had been charged. To the extent that trial counsel did not attempt to make this showing and Bloom believes they should have, appellate counsel made the proper decision not to raise that issue on

7

appeal.

Bloom's assertion that appellate counsel was ineffective for failing to directly challenge the Court's ruling on appeal also fails. Bloom contends that the Court "imposed an impossible to meet requirement for relevancy; *i.e.*, that the auditors must be shown to have looked at the precise fraudulent conduct alleged by the government." (Def.'s § 2255 Mot., Dkt. # 1, at 33.) As an initial matter, Bloom's characterization of the requirement as "impossible" is belied by his own appellate counsel's position that trial counsel could have elicited testimony from auditors "even in light of the Court's ruling. . . ." (Def.'s § 2255 Mot., Ex. B, Dkt. # 1-2, ¶ 34.) Moreover, the Court's ruling was not error; it made a determination that the substantial prejudice of having auditors from "big name" companies testify that Sentinel's book and records generally passed their reviews and audits outweighed the probative value of the testimony in the absence of Bloom's showing that the auditors were looking for or had reviewed documents relevant to the fraud that he was accused of committing. Bloom has not persuaded this Court that a challenge to its evidentiary ruling (which would have been reviewed under the deferential abuse-of-discretion standard) was clearly stronger than the issues counsel raised on appeal. Nor has he established a "reasonable probability" that an appellate challenge to the Court's ruling on the auditor issue "'would have altered the outcome of his direct appeal had it been raised.'" *Stallings*, 536 F.3d at 627 (citation omitted). Accordingly, this basis for relief is denied.

D. <u>Ineffectiveness of Trial Counsel</u>

To prevail on an ineffective assistance of counsel claim, Bloom must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 688 (1984), establishing that (1) his lawyer's performance fell below an objective standard of reasonableness and (2) that he was

8

prejudiced, *i.e.*, there is a reasonable probability that the result of the proceedings would have been different, but for his counsel's unprofessional errors. *Id*. at 694. Bloom claims that trial counsel was ineffective for failing to investigate or developing evidence that Bloom did not participate in interest-rate manipulation, and that Charles Mosley, Bloom's co-defendant, was alone responsible for that fraudulent conduct. But that is the exact defense Bloom offered at trial. Defense counsel stated as follows during his closing argument:

> The interest rates. The interest rates. What is the evidence? The testimony was undisputed. The government just spent 20 minutes of its closing argument telling you that Eric and Mosley did this, Eric and Mosley did this, Eric and Mosley set the rates on a daily basis. Is that what you heard from that witness stand ? That Eric and Mosley set the rates every day? The testimony was uncontradicted. Mosley set the rates. Mosley set the rates every day. Every day. What Crystal York said was Charles Mosley set the rates by himself every day. If he was in the office, he did it. If he was reachable by phone, he did it. If he was reachable by e-mail, he did it.

(3/24/14 Trial Tr., Dkt. # 221 (No. 12 CR 409), at 2735-36.)

Bloom now contends that trial counsel was ineffective for having failed to call Barbara MacDonald, a Sentinel employee "who could have testified that prior to Mosley's arrival at Sentinel, the assigning of interest rates among various Sentinel accounts was not performed fraudulently." (Def.'s § 2255 Mot., Dkt. # 1, at 54.) Assuming this is true, simply because the fraudulent interest-rate manipulation did not begin until after MacDonald left and Mosley took over does not mean that he was solely responsible for it. As the Seventh Circuit noted in denying Bloom's challenge to the sufficiency of the evidence on this aspect of the fraud, "[a]lthough co-defendant Mosley oversaw the daily rate setting, Bloom was aware of and involved in the

9

practice." *Bloom*, 846 F.3d at 252.[3]

Bloom also asserts that Mosley's trading often resulted in subpar, and sometimes zero, returns, and that MacDonald could have testified that "as Sentinel's previous portfolio manager, [she] had never . . . purchased or heard of Sentinel purchasing securities which earned zero interest." (Def.'s § 2255 Mot., Dkt. # 1, at 55.)  This is relevant because, Bloom argues, trial counsel could have used this evidence to demonstrate that Mosley had a motive to manipulate interest rates – to cover up his poor trading performance and increase the value of his phantom stock rights.[4]  Again, however, that Mosley had a motive (however speculative it might be) to alter interest rates does not negate the clear evidence that Bloom was also a knowing participant in the fraud.  As noted by the Supreme Court, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690.  Given that Bloom presented the theory at trial, counsel's choice not to further investigate the issue or present the additional evidence described above does not support a finding of either cause or prejudice.  Accordingly, this basis for relief is denied.

---

[3] The Seventh Circuit went on to note that "[Bloom] created the spreadsheet that employees used [to calculate how funds should be redistributed to achieve the interest rates Bloom and Mosley concocted versus what was actually earned], and he received a daily email with the rate calculation spreadsheet for that day." *Bloom*, 846 F.3d at 252.  Moreover, "[e]mployees also sometimes consulted Bloom himself with specific rate-setting questions," and the Seventh Circuit provided examples from the evidence presented at trial. *Id*.

[4] According to the government, Mosley's employment agreement provided that if certain conditions were met (*i.e.*, Mosley died, retired, became disabled, or there was a change of control at Sentinel), Mosley would have been eligible for "a number of shares equal to 125% of [his] eligible bonus . . . divided by the 'Date of Grant Price.'" (Gov't's Resp., Dkt. # 10, at 36) (quoting Employment Agreement, Def.'s Ex. O, Dkt. # 1-15, at §§ 3.4(b)(i) & (iv).)

**Conclusion**

For the reasons stated above, Bloom's § 2255 motion and request for an evidentiary hearing are denied. Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Bloom has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore denies a certificate of appealability.

Date: June 25, 2019

_____
Ronald A. Guzmán
United States District Judge